UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

ROBERT H. MASON,

                    Plaintiff,

       v.

AUTO TRUCK TRANSPORT USA INC.,
AUTO TRUCK TRANSPORT USA LLC,
and ATC TRANSPORTATION LLC,

                    Defendants.

Case No. 13-CV-442

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Auto Truck Transport USA Inc., Auto Truck Transport USA LLC, and ATC Transportation LLC (collectively, "Defendants"), by their attorneys Reinhart Boerner Van Deuren s.c., hereby move for summary judgment with respect to Plaintiff Robert Mason's claims.

## <u>INTRODUCTION</u>

Defendants move for summary judgment with respect to the age and disability failure to hire claims asserted by Plaintiff Robert Mason ("Mason"). Mason predicates these claims on an alleged telephone conversation that union official Boysen Anderson claims to have had with then Auto Truck Transport USA LLC officer Scott Vallier. According to Anderson, Vallier stated in this alleged conversation that he would not hire Mason due to Mason's age and/or (alleged) disability.

Unfortunately for Mason, such an alleged conversation never occurred. Defendants declined to hire Mason in February 2012 because he lacked the requisite recent over-the-road tractor trailer driving experience mandated by Defendants' driver

hiring standards, not because of his age or any alleged impairment.  For these and other reasons set forth below, Mason's claims must fail as a matter of law.

## STATEMENT OF FACTS

### I.    OVERVIEW AND PARTIES

This is a civil action in which Plaintiff has asserted disparate treatment disability and age discrimination claims against Defendants Auto Truck Transport USA Inc., Auto Truck Transport USA LLC ("ATT" or "Auto Truck"), and ATC Transportation LLC in connection with Defendants' February 13, 2012 decision not to rehire him as a truck driver.  (Defendants' Proposed Findings of Fact[1], ¶ 1.)  Plaintiff was born in May of 1950.  (*Id.*, ¶ 2.)

Defendants Auto Truck Transport USA LLC and ATC Transportation LLC are subsidiaries of JHT Holdings, Inc., a Delaware corporation which is not a party to this action.  (*Id.*, ¶¶ 5, 7.)  Auto Truck Transport USA LLC is the successor entity to Auto Truck Transport USA, Inc., which ceased to exist as an entity effective on or about January 1, 2010.  (DPFF ¶ 4.)

ATC Transportation LLC is an administrative entity that services and supports the other subsidiaries of JHT Holdings, Inc.[2] (DPFF ¶ 6.)

### II.   RELEVANT NOT-PARTY INDIVIDUALS AND ENTITIES

#### A.    <u>Boysen Anderson</u>

Boysen Anderson is the Automotive Coordinator for the International Association

---

[1] For the remainder of this memorandum, Defendants will use "DPFF" as shorthand for "Defendants' Proposed Findings of Fact."

[2] JHT Holdings, Inc.'s other subsidiaries -- Active USA LLC, Pleasant Prairie Logistics LLC, Equipment Transfer LLC, and Unimark Truck Transport LLC -- are also not parties to this action.  (DPFF ¶¶ 5-7.)

of Machinists and Aerospace Workers ("IAMAW") union, a role he has held since 2001. (DPFF ¶ 8.)  As Automotive Coordinator, Anderson serves as the principal spokesperson and negotiator for all IAMAW national agreements involving the automotive industry, including IAMAW's agreement(s) with Auto Truck Transport USA LLC.  (*Id.*, ¶ 9.)

Since at least December 2007, Anderson has utilized an IAMAW-provided cell phone with the number (301) 346-2239.  (*Id.*, ¶ 10.)  Anderson's direct office telephone line since at least January 1, 2012 is (301) 967-4556.  (*Id.*, ¶ 11.)  The main IAMAW office telephone number has been (301) 967-4500 since at least January 1, 2012.  (*Id.*)

**B.**     **Mark Hammond**

Mark Hammond is an IAMAW Business Representative who reports to Boysen Anderson, services all IAMAW union employees at ATT terminals, and handles all local IAMAW union grievances at those ATT terminals.  (*Id.*, ¶ 12.)  Since at least January 1, 2012, Mark Hammond has had an IAMAW-provided cell phone with the number (301) 529-8291.  (*Id.*, ¶ 13.)

**C.**     **Scott Vallier**

Scott Vallier is currently the Senior Vice President of Pleasant Prairie Logistics LLC.  (*Id.*, ¶ 14.)  Vallier previously served as ATT's Vice President of Operations from approximately early 2010 to late 2013.  (*Id.*, ¶ 15.)

As part of his VP of Operations role at Auto Truck Transport USA LLC, Vallier dealt with IAMAW union truck driver grievances.  (*Id.*, ¶ 16.)  Vallier dealt primarily with Mark Hammond when addressing IAMAW union matters as ATT VP of Operations from early 2010 to late 2013.  (*Id.*, ¶ 17.)   Vallier and Hammond typically spoke a few times a week in this regard.  (*Id.*)

During this same early 2010 to late 2013 period, Vallier "very, very rarely" dealt with IAMAW Automotive Coordinator Boysen Anderson.  (*Id.*, ¶ 18.).  Vallier rarely dealt with Anderson because, commencing in 2011, Anderson and Vallier had an adversarial relationship stemming from Anderson's repeated attempts to lobby Vallier's then-supervisor Ed Cumbo to fire Vallier.  (*Id.*, ¶ 19.)

Since at least December 2011, Vallier had a company-provided cell phone with the number (262) 705-8222.  (*Id.*, ¶ 20.)  Vallier's direct office telephone number during his tenure as ATT's VP of Operations was (262) 564-7403.  (*Id.*, ¶ 21.)

**D.   Matthew Troha**

Matthew Troha is Deputy General Counsel and Vice President for JHT Holdings, Inc., a position he has held since January 2013.  (*Id.*, ¶ 22.).  Beginning in April 2010 and prior to becoming Deputy General Counsel and Vice President in January 2013, Troha served as JHT Holdings, Inc.'s Vice President of Human Resources and Deputy General Counsel.  (*Id.*, ¶ 23.)

Since at least January 1, 2011, Troha's direct office telephone line has been (262) 564-7006.  (*Id.*, ¶ 24.)  Troha has also used a cell phone for business since that same period with the phone number (262) 914-2507.  (*Id.*, ¶ 25.)

**E.   Susan Jecevicus**

Susan Jecevicus (née Sucharski) worked for ATC Transportation LLC as a Driver Hiring Specialist from October 2011 to April 2012 and as a Medical Recruiting Manager from April 2012 to March 2014.  (*Id.*, ¶ 26.)   She presently works for ATC Transportation LLC as a Driver Hiring Specialist on a part-time basis. (*Id.*, ¶ 27.)

As a Driver Hiring Specialist, Jecevicus's duties include, among other things,

fielding phone calls from potential driver candidates and reviewing driver applications. ((*Id.*, ¶ 28.).  Jecevicus's direct office line from October 2011 to April 2012 was (262) 564-7011.  (*Id.*, ¶ 29.)

**F.  Jennifer Clanton**

From 2007 to February 2013, Jennifer Clanton served as a HR Generalist for ATC Transportation LLC.  (*Id.*, ¶ 30.)  Clanton's direct office phone number for the June 2011 to June 2012 period was (262) 564-7191.  (*Id.*, ¶ 31.)

**G.  MYCO USA, LLC**

MYCO USA, LLC is an outside recruiting agency that ATT and ATC Transportation LLC utilized to help hire truck drivers in 2011 and 2012.  (*Id.*, ¶ 32.)

**III.  MASON'S EMPLOYMENT HISTORY WITH ATT**

**A.  Background Facts**

Mason began working as a truck driver for Auto Truck Transport USA Inc. – now Auto Truck Transport USA LLC (collectively, "ATT" or "Auto Truck") – on or about March 8, 2004.  (*Id.*, ¶ 33.)  As a truck driver for ATT, Mason's principal duty was to deliver new trucks from the factory to dealers.  (*Id.*, ¶ 34.)

Mason worked out of ATT's St. Thomas, Ontario, Canada terminal from March 8, 2004 to May 1, 2004 then transferred to ATT's Springfield, Ohio terminal for the period of May 1, 2004 to approximately January 2010.  (*Id.*, ¶ 36.)  Mason was a member of the IAMAW union while employed by ATT and remains an IAMAW member at this time. (*Id.*, ¶ 35.)

**B.  Breaks in Mason's Service**

Mason's work for ATT was interrupted on various occasions during his tenure,

5

including the following instances:

- Mason suffered a work-related concussion in January 2005 after falling on ice while un-decking trucks. (*Id.*, ¶ 37.)

- ATT laid Mason off on July 13, 2007, but Mason returned to work on December 26, 2007. (*Id.*, ¶ 38.)

- Mason was laid off again on January 29, 2008 but returned to work on February 19, 2008. (*Id.*, ¶ 39.)

- Mason went on short-term disability from ATT effective June 20, 2008 due to plantar fasciitis but returned to work on September 24, 2008. (*Id.*, ¶ 40.)

- Mason was laid off again on October 2, 2008. (*Id.*, ¶ 41.) While on lay off in October 2008, Mason went on short-term disability for plantar fasciitis until December 8, 2008. (*Id.*, ¶ 42.)

- Mason returned to work in early December 2008 but was subsequently laid off again effective December 16, 2008. (*Id.*, ¶ 43.)

- Mason returned to work from layoff in November 2009. (*Id.*, ¶ 44.)

- In April 2009, between his December 2008 lay off and his November 2009 recall by ATT, Mason began to receive social security disability payments in connection with "bad feet," *i.e.*, plantar fasciitis. (*Id.*, ¶ 45.)

- Mason resumed working for ATT as a truck driver from November 5, 2009 until he was laid off again on January 7, 2010, his last day worked for ATT. (*Id.*, ¶ 46.)

**C.   <u>Mason Refuses ATT's May 2010 Recall Invitation and Retires</u>**

In May 2010, with Mason's 60th birthday imminently approaching, ATT recalled Mason from layoff, *i.e.*, invited him to return to work. (*Id.*, ¶¶ 2, 47.)

But Mason refused ATT's offer. (*Id.*, ¶ 48.) Instead, Mason chose to retire because -- in his own words -- he was "getting a little older, no spring chicken and there was [sic] fish in Lake of the Ozarks [he] hadn't caught yet." (*Id.*, ¶¶ 49-50.)

IV.    MASON CHANGES HIS MIND ABOUT RETIREMENT

    A.    **Mason Works for B&M Manufacturing**

Roughly one month after spurning ATT's May 2010 recall offer in order to retire and fish, Mason went to work for B&M Manufacturing as a truck driver pulling tandem loads of boat trailers.  (*Id.*, ¶ 51.)   Mason remained in B&M Manufacturing's employ until at least June 2011, though he was placed on lay-off status in mid-February 2011. (*Id.*, ¶ 52.)

    B.    **Mason Contacts ATT about Returning Around May 2011**

Around May 2011, Mason began contemplating a return to ATT.  (*Id.*, ¶ 53.)  A day after a tornado struck the Joplin, Missouri area in May 2011, Mason called a Joplin-based ATT payroll employee to see if she was okay.  (*Id.*, ¶ 54.)  As part of this May 2011 conversation, Mason informed the payroll employee that he was considering returning to work for ATT.  (*Id.*, ¶ 55.)  Per Mason, the Joplin-based ATT payroll employee told Mason that he would need to speak with ATT VP of Operations Scott Vallier.  (*Id.*, ¶ 56.)

Mason, however, did not call Scott Vallier.  (*Id.*, ¶ 57.)  Instead, Mason waited until June 2011 and called ATT's recruiting office, which informed him that they would need to check to see if he was eligible for rehire.  (*Id.*, ¶ 58.)

    C.    **ATT (and Scott Vallier) Confirm Mason's Eligibility for Rehire in June 2011**

On Thursday, June 16, 2011, MYCO USA, LLC employee Tara Baxa -- following up on Mason's eligibility question -- sent an e-mail to then-ATT VP of Operations Scott Vallier and Jason LeQuesne, a Senior Worker's Compensation

7

Specialist for JHT Holdings, Inc., seeking information on Mason as a potential driver applicant. (*Id.*, ¶ 59.)

Vallier responded to Baxa's e-mail later that evening, noting: "I need to see the employees [sic] W/C history before I can approve." (*Id.*, ¶ 60.)  While serving as VP of Operations, Vallier on a handful of occasions examined an individual's workers' compensation and preventable accident history -- focusing on the underlying act, not the injury -- to see if an individual followed Company safety processes and possessed a safe work history. (*Id.*, ¶ 61.)

The next morning, Friday, June 17, 2011, Jason LeQuesne informed Vallier that Mason had "an incident only in 06/2006 and a claim with less than $1,000 paid from 09/2006." (*Id.*, ¶ 62.)  Based on this information from LeQuesne that Mason had minimal to no unsafe work acts at ATT as well as Mahlon Gragen's June 13, 2011 e-mail that Mason had no preventable accidents, Vallier green-lighted Mason's candidacy later that Friday, June 17, 2011 by replying "Good for me." (*Id.*, ¶ 63.)

Consequently, on or about June 20, 2011 someone from ATT's recruiting office called Mason -- now age 61 -- and informed him that he was indeed eligible for rehire. (*Id.*, ¶¶ 2, 64.)  Yet Mason again waivered, informing ATT that he would "think about it." (*Id.*, ¶ 65.)

Despite his eligibility for rehire and express invitation from ATT to do so, Mason was reluctant to apply for reemployment with ATT because he had starting working for B&M Manufacturing, and this work was both closer to his home and less demanding than his work with ATT. (*Id.*, ¶ 66.)  Mason also starting working as a truck driver for Lake Printing in July 2011. (*Id.*, ¶ 67.)

**D.      Mason Calls Jennifer Clanton in October 2011 About Returning to Work for ATT**

By October 2011, Mason decided that he missed working for ATT and wanted to return.   (*Id*, ¶ 68.)   Accordingly, on October 21, 2011, Mason called then-ATC Transportation LLC HR Generalist Jennifer Clanton from his cell phone to inquire about the possibility of coming back to work.  (*Id*, ¶ 69.)

 For the past five years, Mason's cell phone number has been (573) 480-1903.  (*Id*, ¶ 70.)  Mason has not had a home telephone number during that time.  (*Id.*, ¶ 71.)

During this October 21, 2011 conversation, Mason also informed Clanton that he was drawing IAMAW pension benefits.   (*Id.*, ¶ 72.)   Mason and Clanton did not, however, discuss Mason's plantar fasciitis or any other health issues during this October 21, 2011 conversation. (*Id.*, ¶ 73.)

According to Mason, Clanton informed him that the IAMAW pension fund rules prohibited employers like ATT from hiring any individual who was drawing IAMAW disability pension benefits.  (*Id.*, ¶ 74.)  In actuality, Clanton merely advised Mason to contact the IAMAW pension fund to ensure that he fully understood what might happen to his IAMAW pension benefits if he was rehired by ATT.  (*Id.*, ¶ 75.)  With respect to rehire, Clanton advised Mason that she was not involved in recruiting and that he needed to go through ATT's recruiting department.  (*Id.*, ¶ 76.)

Mason called the IAMAW pension fund shortly after his October 21, 2011 conversation with Jennifer Clanton.  (*Id.*, ¶ 77.)  Pam Connely of the IAMAW pension fund informed him that his receipt of IAMAW pension benefits did not preclude his return to work.  (*Id.*, ¶ 78.)  Shortly after learning this information from Ms. Connely, Mason claims to have called Jennifer Clanton to inform her that his receipt of pension

9

benefits did not prohibit him from seeking employment with ATT.  (*Id.*, ¶ 79.)

### E.      Clanton Informs Mason He Can Reapply; Mason Waivers (Again)

Mason claims that a few days later, in late October 2011, Clanton informed him that he could indeed apply for rehire.  (*Id.*, ¶ 80.)  Clanton neither believed that Mason was not eligible to return to work because he had retired nor ever told Mason that he was not eligible to work because he had retired. (*Id.*, ¶¶  81-82.)

Despite Clanton's late October 2011 statement to Mason that he could reapply to ATT, Mason made no immediate efforts to apply.  (*Id.*, ¶ 83.)  Mason hesitated because he was working for another company, Lake Printing, at the time and because he did not want to be away from his family during the upcoming Thanksgiving and Christmas holidays.  (*Id.*, ¶ 84.)  Likewise, Mason did not apply to ATT in January 2012 because the weather was cold and he did not want to be unloading trucks in North Dakota or Northern Wisconsin in January.  (*Id.*, ¶ 85.)

## V.     MASON'S FEBRUARY 2012 APPLICATION FOR EMPLOYMENT

### A.      Mason Applies for Rehire with ATT in February 2012

On Sunday, February 12, 2012, Mason finally submitted an online employment application for a truck driver position with ATT.  (*Id.*, ¶ 86.)  This was Mason's first application for employment with ATT since retiring in May 2010.  (*Id.*, ¶ 89.)  Mason decided to apply at this time because the work he had been performing for Lake Printing since July 2011 had dried up and he wanted the superior health care coverage that came with working at ATT.  (*Id.*, ¶ 87.)

Mason did not speak with Jennifer Clanton or anyone else at ATT between late October 2011 and when he filed this online application on February 12, 2012.  (*Id.*, ¶ 88.)

10

Moreover, Mason did not voluntarily self-identify himself as a "Disabled Individual" on his February 12, 2012 ATT application.  (*Id.*, ¶ 90.)

**B.**     **ATC Transportation Driver Hiring Specialist Susan Jecevicus Reviews and Denies Mason's Application**

At the time Mason applied to ATT in February 2012, all online employment applications for ATT would go to both: (i) ATC Transportation LLC Driver Hiring Specialist Susan Jecevicus and (ii) MYCO USA, LLC, a recruiting agency utilized by ATT.  (*Id.*, ¶ 91.)

On Monday morning, February 13, 2012, Jecevicus reviewed the online employment application that Mason submitted at 11:44 a.m. the previous day, Sunday, February 12, 2012.  (*Id.*, ¶ 92.)  Between October 2011 and March 2012, Jecevicus reviewed each ATT driver application for, among other things, whether the applicant had been an over-the-road driver of tractor trailers for at least one-continuous year within the three years preceding the date of the application.  (*Id.*, ¶ 93.)  Jecevicus conducted such a review because ATT driver hiring requirements then in place mandated that a driver applicant must have had one full year of over-the-road tractor trailer driving experience with the past three years. (*Id.*, ¶ 94.)

In this instance, Jecevicus reviewed the information contained in Mason's February 12, 2012 application and determined that Mason did not meet ATT hiring requirements with respect to over-the-road tractor trailer experience.   (*Id.*, ¶ 95.)  Accordingly, Jecevicus sent Mason a generic denial letter via e-mail at 1:44 p.m. on Monday, February 13, 2012.  (*Id.*, ¶ 96.)

Jecevicus did not review any materials other than Mason's application before issuing him a denial letter based on his failure to meet ATT's hiring requirements.  (*Id.*,

¶ 99.)  Nor did Jecevicus did consult with anyone else at ATT before issuing the denial e-mail to Mason on February 13, 2012.  (*Id.*, ¶ 100.)  In fact, at the time Jecevicus reviewed and rejected Mason's February 12, 2012 employment application, she did not know who Mason was or that he had retired from ATT in May 2010.  (*Id.*, ¶ 101.)

Moreover, Jecevicus was not involved in the discussions regarding Mason's eligibility for rehire by ATT in June 2011 because she was not yet employed by ATC Transportation (or ATT) at that time.  (*Id.*, ¶ 102.)   Jecevicus did not have any knowledge of the June 2011 discussions between Scott Vallier, MYCO, and others regarding Mason's eligibility for rehire at the time she reviewed and denied Mason's employment application.  (*Id.*, ¶ 103.)

And at the time she reviewed and rejected Mason's February 12, 2012 employment application, Jecevicus did not know anything about Mason's worker's compensation history, short-term disability history, receipt of IAMAW pension benefits, receipt of social security disability benefits, or any of Mason's past or present health conditions. (*Id.*, ¶ 104.)  Similarly, Mason never told Jecevicus about any of his medical issues.  (*Id.*, ¶ 105.)

Jecevicus alone made the February 13, 2012 decision to reject Mason's application; Scott Vallier, Matt Troha, and/or Jennifer Clanton played no part in the decision-making process.  (*Id.*, ¶ 106.)

At 3:39 p.m. on February 13, 2012, Mason called Jecevicus on her office line – (262) 564-7011 – from his cell phone number, (573) 480-1903.  (*Id.*, ¶ 97.)  Mason claims that he asked Jecevicus why his application had been rejected and that Jecevicus told him that he would need to speak with Scott Vallier  (*Id.*, ¶ 99.)

### C.  Mason Talks to His IAMAW Union Representatives

Shortly after speaking with Susan Jecevicus on the afternoon of February 13, 2012, Mason attempted to place calls to IAMAW Business Representative Mark Hammond and IAMAW Automotive Coordinator Boysen Anderson from his cell phone. (*Id.*, ¶ 107.)

At 4:19 p.m. on February 13, 2012, Mason had a five minute phone conversation with Hammond – whose cell phone number is (301) 529-8291 – in which Mason asked Hammond why ATT had rejected Mason's application.  (*Id.*, ¶ 108.)  Hammond told Mason that he would "check it out."  (*Id.*, ¶ 109.)

Seven minutes after Mason got after the phone with Hammond, he received a 4:31 p.m. call from Hammond's superior: IAMAW Automotive Coordinator Boysen Anderson.  (*Id.*, ¶ 110.)  Anderson spoke to Mason from his cell phone, (301) 346-2239. (*Id.*, ¶ 111.)    According to Mason, Anderson told him, "Bob, they will not rehire you because of your disability."  (*Id.*, ¶ 112.)  Also according to Mason, Anderson also told him that Scott Vallier was afraid that Mason would reinjure himself and that ATT would then have to deal with a worker's compensation claim.  (*Id.*, ¶ 113.)

Anderson did not tell Mason either: (i) how he knew this information about Scott Vallier allegedly being afraid that Mason would reinjure himself, or (ii) if and/or when Anderson had talked to Scott Vallier. (*Id.*, ¶ 115.)  Mason does not recall Anderson mentioning anything during their February 13, 2012 phone call about age being a factor in ATT's decision not to rehire him.  (*Id.*, ¶ 116.)  Moreover, Mason had never discussed his alleged disability with Anderson prior to this February 13, 2012 conversation.  (*Id.*, ¶ 114.)

Critically, Mason's cell phone records for the time period of October 18, 2011 through April 17, 2012 and Anderson's cell phone records for the period of January 1, 2012 to March 31, 2012 reveal that February 13, 2012 is the only date that Mason and Anderson ever spoke by phone between October 11, 2011 and April 17, 2012.  (*Id.*, ¶ 117.)  Mason attempted to call Anderson at 4:16 p.m. and 5:17 p.m. on that date, and the parties eventually had a 7-to-8 minute conversation initiated by Boysen at 4:31 p.m. that same day.  (*Id.*, ¶ 118.)  Mason's incoming and outgoing cell phone records from October 18, 2011 through April 17, 2012 do not show any other calls either to or from Anderson's cell phone – (301) 346-2239 – or Anderson's direct office line, (301) 967-4566. (*Id.*, ¶ 119.)

### D.  Mason Contacts the EEOC

The next morning, February 14, 2012, Mason called the Equal Employment Opportunity Commission ("EEOC").  (*Id.*, ¶ 120.)  Mason subsequently completed an EEOC Intake Questionnaire on February 15, 2012.  (*Id.*, ¶ 121.)

On that Intake Questionnaire, Mason indicated that he believed ATT discriminated against him by turning down his February 13, 2012 application for employment.  (*Id.*, ¶ 122.)  When asked to respond to question number 7 on the Intake Questionnaire – *Why do you believe these actions were discriminatory?* – Mason replied "Company said they were pursuing other candidates; Union rep. said they did not rehire me because of disability."  (*Id.*, ¶ 123.)  Mason admits: (i) that Boysen Anderson is the "union rep" referenced in this answer to question 7 of the Intake Questionnaire and (ii) that Mason is specifically referring to their February 13, 2012 conversation.  (*Id.*, ¶ 124.)

Additionally, Mason concedes that he only checked the "Age" box as a basis for

discrimination in Question 4 of the Intake Questionnaire because he "was 61 years old, and [he] believed that had something to do with" ATT's decision not to rehire him.  (*Id.*, ¶ 125.)  Per Mason, as of February 15, 2012, no one (including Boysen) had told him that his age had anything to do with the fact that he was not rehired.  (*Id.*, ¶ 126.)

### E.   **Mason Calls Scott Vallier**

On Monday, February 27, 2012, two weeks after receiving his denial e-mail from Susan Jecevicus, Mason called Scott Vallier, ATT's then-Vice President of Operations, to ask why ATT did not hire him.  (*Id.*, ¶ 127.)  Mason waited two weeks to call Scott Vallier because he was extremely angry about his February 13, 2012 rejection and wanted sufficient time to cool off. (*Id.*, ¶ 128.)

Vallier answered Mason's call and asked him to call him back tomorrow, February 28, 2012.  (*Id.*, ¶ 129.)  Mason called Vallier again on February 28, 2012, and Vallier informed Mason that he should instead call Matthew Troha.  (*Id.*, ¶ 130.)  Mason never discussed his "bad feet" or any other medical issues with Vallier.  (*Id.*, ¶ 131.)

### F.   **Mason Talks with Matt Troha**

Mason attempted to make a few phone calls to Matt Troha on February 28 and 29, 2012 to ask why he was not hired, but Mason did not get ahold of him until March 1, 2012. (*Id.*, ¶ 132.)

At the time Mason called him on March 1, 2012, Troha did not know why Susan Jecevicus and/or ATT's recruiting department had rejected Mason's February 13, 2012 employment application (*i.e.*, that Mason did not satisfy the ATT driver hiring requirements).  (*Id.*, ¶ 133.)  Troha did, however, know that Mason had previously worked out of ATT's Springfield, Ohio terminal, whose drivers – in Troha's experience –

had an acrimonious history with ATT and a track record of attitude and disciplinary problems.  (*Id.*, ¶ 134.)  Based on this personal experience, Troha chose not to second-guess or override Jecevicus's decision and or the ATT recruiting department's decision to decline Mason's February 12, 2012 application.  (*Id.*, ¶ 135.)

Nonetheless, Troha opted not to mention his concerns and bad experiences with the Springfield, Ohio terminal during his March 1, 2012 phone conversation with Mason because doing so would have likely resulted in an uncomfortable and contentious conversation.  (*Id.*, ¶ 136.)  Instead, Troha informed Mason – truthfully – that ATT was only hiring a certain number of people at the moment and advised him to call back at a later time.  (*Id.*, ¶ 137.)  Mason, however, never called Troha again.  (*Id.*, ¶ 138.)

Significantly, Mason never told Troha about any of his medical issues, nor did Troha have any knowledge of Mason's alleged health issues when he spoke with Mason by phone on March 1, 2012.  (*Id.*, ¶¶ 139-40.)

## VI.   MASON'S ALLEGED DISABILITY AS OF HIS FEBRUARY 12, 2012 APPLICATION FOR EMPLOYMENT WITH ATT

On his February 15, 2012 EEOC Intake Questionnaire, Mason indicated that he had a disability – "bad feet."  (*Id.*, ¶ 141.)  Mason now claims that he was disabled as of February 2012 because he would have experienced "some discomfort" due to his "bad feet" if he had to stand on his feet for 12, 14, or 16 hours a day.  (*Id.*, ¶ 142.)

One of Defendants' interrogatories to Mason similarly asked him to "identify the precise physical and/or mental impairment(s) that you contend rendered you 'disabled' within the meaning of the Americans with Disabilities Act, as amended ("ADA"), as of the time you applied for re-employment with Defendants in February 2012."  (*Id.*, ¶ 143.)  Mason responded that his primary impairment was caused by plantar fasciitis that

16

disabled him, at times, from walking but that other complications included diabetes, high cholesterol, treatment for melanoma and prostate cancer, removal of gall bladder, two hernia repairs, and gout.  (*Id.*, ¶ 144.)

But Mason admits that he did not have any problems with his feet: (a) in any of the work he has performed for other employers since 2010 or (b) when he applied for reemployment with ATT in February 2012.  (*Id.*, ¶ 145.)  Mason likewise admits that none of his other "complications" -- diabetes, high cholesterol, past cancer and past cancer treatment, hernia repairs, missing gall bladder, or gout -- limited his ability do anything as of February 2012.  (*Id.*, ¶ 146.)

In fact, Mason applied for and obtained employment as a truck driver with Cold Iron shortly after his February 13, 2012 denial by ATT and worked for them during March and April of 2012.  (*Id.*, ¶ 147-48.)

Further, Mason concedes that he has not been off work for any period of time due to a medical condition since late 2009.  (*Id.*, ¶ 149.)  Per Mason, neither plantar fasciitis nor any other health condition has prevented Mason from working since late 2009.  (*Id.*, ¶ 150.)  Mason began working as a driver for All About Boats in May 2012 and still performs work for them.  (*Id.*, ¶ 151.)     And since January 2014, Mason has been working as an owner-operator delivering large RVs from factory or storage lots to dealers. ¶ 152.)

## SUMMARY JUDGMENT STANDARD

### I.    GENERAL STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a); *see also Magnus v. St. Mark United Methodist Church*, 688 F.3d 331, 336 (7th Cir. 2012).  The Court draws all reasonable factual inferences in favor of the nonmoving party.  *Id.* (citing *Spivey v. Adaptive Mktg. LLC*, 622 F.3d 816, 822 (7th Cir. 2010)).

But before the nonmoving party "can benefit from a favorable view of evidence, he must first actually place evidence before the courts." *Montgomery v. Am. Airlines, Inc.*, 626 F.3d 382, 389 (7th Cir. 2010). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a verdict for that party." *Egonmwan v. Cook Cnty. Sheriff's Dep't*, 602 F.3d 845, 849 (7th Cir. 2010) (internal quotation marks and citation omitted). Simply showing that there is "some metaphysical doubt as to the material facts" will not defeat a motion for summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citations omitted); *see also Argyropoulos v. City of Alton*, 539 F.3d 724,732 (7th Cir. 2008).

Rather, "[t]o survive summary judgment, a nonmovant must be able to show that a reasonable jury could return a verdict in [his] favor; if [he] is unable to establish the existence of an element essential to [his] case, and on which [he] will bear the burden of proof at trial, summary judgment must be granted." *Benuzzi v. Bd. of Educ. of City of Chi.*, 647 F.3d 652,662 (7th Cir. 2011) (internal quotation marks and citation omitted).

## II.    ADA AND ADEA "BUT FOR" CAUSATION STANDARD

Here, to survive summary judgment on his disability discrimination claim under the Americans with Disabilities Act, as amended ("ADA"), Mason must produce evidence that would permit a reasonable jury to find that his alleged disability was a but-

for cause of Defendants' February 13, 2012 decision not to rehire him.  *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 603-04 (7th Cir. 2012); *see also Serwatka v. Rockwell Automation, Inc.*, 591 F.3d 957, 962-63 (7th Cir. 2010) (stating that ADA does not recognize mixed-motive claims).

This same but-for causation requirement also governs Mason's age discrimination claim under the Age Discrimination in Employment Act ("ADEA").  *See Gross v. FBL Financial Services*, 557 U.S. 167, 176, 129 S.Ct 2343, 174 L.Ed.2d 119 (2009) (holding that ADEA's language prohibiting discrimination "because of" age requires  plaintiff to prove that age was the but-for cause of the adverse employment action); *Fleishman*, 698 F.3d at 604 (Noting that post-*Gross* Seventh Circuit precedent requires an ADEA plaintiff to "show evidence that could support a jury verdict that age was a but-for cause of the employment action at the summary judgment stage") (citation omitted).

## ARGUMENT

I.  **THE COURT SHOULD REFUSE TO ADOPT MASON'S VERSION OF THE FACTS REGARDING BOYSEN ANDERSON'S ALLEGED CONVERSATION WITH SCOTT VALLIER IN EARLY 2012 BECAUSE NO REASONABLE JUROR COULD CREDIT ANDERSON'S ALLEGATIONS**

As a threshold matter, the Court should reject Mason's version of the facts for purposes of summary judgment with respect to Boysen Anderson's specious claim that Scott Vallier openly confessed to Anderson in an early 2012 phone conversation that ATT would not rehire Mason because of his age and alleged disability.

### A.   **The Court Cannot Adopt Proposed Facts Contradicted by Record Evidence**

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not

19

adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

This principle extends to factual allegations that are refuted by phone records. *See Cunningham v. Tennessee Cancer Specialists*, PLLC, 2013 WL 3716877, at **29-30 (E.D.Tenn. July 12, 2013) (Refusing to adopt plaintiff's version of the facts at summary judgment – *i.e.,* that plaintiff called employer to report her absences on certain days – because no reasonable juror who looked at the relevant phone records could believe that plaintiff made such calls).

### B.   The Record Evidence Controverts Anderson's Allegations Regarding His Alleged Phone Conversation Scott Vallier

Significantly, Anderson concedes that if his alleged phone calls to Scott Vallier actually occurred, they would show up in either his or Vallier's phone records.  (DPFF ¶ 157.)  Here, the relevant phone records and other evidence in the record demonstrate that no reasonable juror could believe that Boysen Anderson and Scott Vallier spoke by phone in early 2012, much less that Scott Vallier openly allegedly confessed to age and disability discrimination to an adversary with whom he rarely spoke.  The Court should therefore reject Anderson's allegations for purposes of this summary judgment motion.

In this case, Anderson admitted that he programmed Scott Vallier's cell phone number – (262) 705-8222 – into his iPhone as one of his "Favorites" such that whenever he pulled up the "Scott Vallier" contact in his iPhone, it would dial to Vallier's cell phone.  (*Id.*, ¶ 153.)  Indeed, Anderson admitted that he would virtually always call Scott Vallier on Vallier's cell phone.  (*Id.*, ¶ 154.)  Per Anderson, "99 [percent] of my calls to Scott was [sic] on his cell.  Very seldom I would call his [office] …"  (*Id.*, ¶ 155.) Anderson would only call Vallier on Vallier's office line if he could not first reach Vallier

on his cell phone.  (*Id.*, ¶ 156.)

> **1.**    ***Anderson's Allegations Regarding the Frequency of his Purported Conversations with Scott Vallier Do Not Square with the Record Evidence***

In late 2011 and early 2012, Anderson claims to have called Scott Vallier "weekly" on Vallier's cell phone.  (*Id.*, ¶ 158.)     Anderson further claims that he and Vallier talked "several times a month" between January 2012 and October 2012.  (*Id.*, ¶ 159.)

Yet Anderson's cell phone records for the period of January 1, 2012 through March 31, 2012 do not show: (i) any calls to Vallier's cell phone or Vallier's office phone or (ii) any calls from Vallier's cell phone or Vallier's office phone. (*Id.*, ¶ 160.)  In fact, Vallier's cell phone records for the period of December 19, 2011 through May 31, 2012 show only two phone calls with Boysen Anderson: (1) a six-minute incoming call from Anderson's cell phone at 1:39 p.m. on April 9, 2012, (ATT 0233), and (2) a six-minute incoming call from Anderson's cell phone at 8:23 a.m. on May 16, 2012, (ATT 0238). (*Id.*, ¶ 161.)

Likewise, Vallier's cell phone records for the period of December 19, 2011 through May 31, 2012 reveal no calls either to or from Anderson direct office line, (301) 967-4556, or Anderson's main office number at IAMAW, (301) 967-4500.  (*Id.*, ¶ 162.)

> **2.**    ***Anderson's Purported Conversation with Mason Prior to Mason's February 13, 2012 Rejection by ATT Did Not Occur***

Anderson claims that Mason called him sometime in late January or February of 2012 – before Mason's February 12, 2012 application to ATT – and asked him if he would put in a good word with ATT for him to be hired.  (*Id.*, ¶ 166.)  Per Anderson, "When he [Mason] called me, he had not been turned down.  He just asked me would I

call the company and just make sure they know he was a good [employee] – in order for him to get hired.  I said absolutely." (*Id.*, ¶ 167.)

However, Mason made no mention of this alleged pre-rejection conversation with Anderson in his deposition. (*Id.*, ¶ 168.)  And both Mason's cell phone records for the time period of October 18, 2011 through April 17, 2012 and Anderson's cell phone records for the period of January 1, 2012 to March 31, 2012 reveal that February 13, 2012 is the only date that Mason and Anderson spoke by phone between October 11, 2011 and April 17, 2012. (*Id.*, ¶ 169.)

> ### 3. *Anderson's Alleged Conversation with Vallier in Early 2012 Never Took Place*

After Anderson's alleged conversation with Mason in early 2012 in which Anderson claims that Mason asked him to put in a good word for him, Anderson claims that he called Scott Vallier. (*Id.*, ¶ 170.)  Per Anderson, it was not an in-person conversation. (*Id.*, ¶ 172.)

According to Anderson, Vallier in this conversation expressed concern with Mason's age and disability, stated his fear that Mason would come back and reinjure himself such that ATT would then be stuck with a worker's compensation claim, and indicated that he would not rehire him. (*Id.*, ¶ 173.)

Anderson admits that this call would have had to occur sometime on or before February 15, 2012, when Mason filled out an EEOC Intake Questionnaire indicating that a "union rep" [Mason] told him that ATT would not rehire him due to disability. (*Id.*, ¶ 174.)  Mason's deposition testimony, Mason's phone records, and Anderson's phone records each show that Mason's conversation with Anderson in this regard actually occurred on the afternoon of February 13, 2012, meaning that Anderson's conversation

22

with Vallier would have had to occur on or before February 13, 2012.  (*Id.*, ¶ 175.)

However, Anderson also confusingly claims that "shortly after" this conversation with Scott Vallier in which Vallier allegedly referenced Mason's age and disability (which must have occurred on or before February 13, 2012), Mason called Anderson back again after he [Mason] had spoken with Matt Troha.  (*Id.*, ¶ 176.)

 But Mason did not speak with Troha until March 1, 2012.  (*Id.*, ¶ 177.)   And both Mason's cell phone records for the time period of October 18, 2011 through April 17, 2012 and Anderson's cell phone records for the period of January 1, 2012 to March 31, 2012 reveal that February 13, 2012 is the only date that Mason and Anderson ever spoke by phone between October 11, 2011 and April 17, 2012.  (*Id.*, ¶ 178.)

Moreover, Anderson's cell phone records for the period of January 1, 2012 through March 31, 2012 do not show: (a) any calls to Vallier's cell phone or Vallier's office phone or (b) any calls from Vallier's cell phone or Vallier's office phone.  (*Id.*, ¶ 179.)  Vallier's cell phone records for the period of December 19, 2011 through May 31, 2012 show only two phone calls with Boysen Anderson: (1) a six-minute incoming call from Anderson's cell phone at 1:39 p.m. on April 9, 2012, (ATT 0233), and (2) a six-minute incoming call from Anderson's cell phone at 8:23 a.m. on May 16, 2012, (ATT 0238).  (*Id.,* ¶ 181.)  And Vallier's cell phone records for the period of December 19, 2011 through May 31, 2012 similarly reveal no calls either to or from Anderson direct office line, (301) 967-4556, or Anderson's main office number at IAMAW, (301) 967-4500.  (*Id.,* ¶ 181)

Here, Anderson's allegations regarding his alleged conversations with Vallier -- including but not limited to the purported early 2012 conversation in which Vallier

supposedly identified discriminatory animus) -- are not just internally inconsistent, they are irreconcilable with the record evidence.  As in *Scott*, Mason and Defendants "present two different stories, one of which is blatantly contradicted by the record."  *Id.*, 550 U.S. at 380.  Since no reasonable jury evaluating Anderson's testimony, the relevant phone records, and other evidence could believe Anderson's allegations regarding Vallier's alleged "age and disability" comments, the Court should not permit Mason to adopt Anderson's version of such facts for purposes of summary judgment.  *Id.*; *Cunningham*, 2013 WL 3716877, at **29-30.

## II.    MASON'S AGE DISCRIMINATION CLAIM FAILS AS A MATTER OF LAW

The Court should grant Defendants summary judgment with respect to Mason's ADEA claim because (1) Mason lacks any competent direct evidence of age discrimination, (2) Mason cannot establish a prima face case of age discrimination under the indirect method of proof, and (3) Defendants had a legitimate, non-discriminatory, and non-pretextual reason for rejecting Mason.

### A.    Applicable Legal Standard

The Age Discrimination in Employment Act of 1967 ("ADEA") makes it unlawful for an employer to fail or refuse to hire, to discharge, or to discriminate against an employee "because of" the employee's age.  29 U.S.C. § 623(a)(1). The ADEA protects employees who are at least 40 years old and have received less favorable treatment than employees who are both "substantially younger" and "similarly situated." *Ransom v. CSC Consulting, Inc.*, 217 F.3d 467, 470 (7th Cir. 2000). "'Substantially younger' means at least a ten-year age difference." *Fisher v. Wayne Dalton Corp.*, 139 F.3d 1137, 1141 (7th Cir. 1998) (citation omitted).

To prevail on his ADEA claim, Mason must prove that age was the "but for" cause of his failure to be hired. *Gross v. FBL Financial Services, Inc.*, 557 U.S. 167, 129 S.Ct. 2343, 174 L.Ed.2d 119 (2009). Put another way, Mason "must prove that, but for his age, the adverse action [here, failure to hire] would not have occurred." *Martino v. MCI Communications Services, Inc*., 574 F.3d 447, 455 (7th Cir. 2009).

### B.   <u>Methods of Proof</u>

Mason can prove age discrimination either directly by presenting direct or circumstantial evidence of discrimination, or indirectly using the burden-shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Coleman v. Donahoe*, 667 F.3d 835, 845 (7th Cir. 2012*); Silverman v. Board of Education of the City of Chicago*, 637 F.3d 729, 733 (7th Cir. 2011).

Under the direct method, Mason must offer either direct or circumstantial evidence that supports an inference of intentional discrimination. Direct evidence requires an admission of discriminatory intent. *Alexander v. Casino Queen, Inc.*, 739 F.3d 972, 979 (7th Cir. 2014). Nonetheless, Mason can also prevail under the direct method "by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" *Rhodes v. Illinois Dept. of Transportation*, 359 F.3d 498, 504 (7th Cir. 2004) (citation omitted). Such direct or circumstantial evidence, however, "must point directly to a discriminatory reason for the employer's action." *Adams v. Wal-Mart Stores, Inc*., 324 F.3d 935, 939 (7th Cir. 2003). There must be a real causal link between the discrimination alleged and an adverse employment action. *Gorence v. Eagle Food Ctrs., Inc*., 242 F.3d 759, 762 (7th Cir. 2001).

25

Under the indirect method of proof, Mason must first establish a prima facie case of age discrimination by showing that: (1) "[he] was 40 or older," (2) "[he] applied for and was qualified for the position sought," (3) "[he] was rejected for the position," and (4) someone similarly situated but "substantially younger than [him] was given the position." *Schaffner v. Glencoe Park Dist.*, 256 F.3d 616, 620 (7th Cir. 2001); *Ransom*, 217 at 470; *Fisher*, 139 F.3d at 1141.

Once a prima facie case is established, a presumption of discrimination is triggered and the burden shifts to the Defendants to articulate some legitimate, nondiscriminatory reason for their action. *Bennett v. Roberts*, 295 F.3d 687, 694 (7th Cir. 2002). Once Defendants do so, the burden shifts back to Mason, who must present evidence that Defendants' stated reason is a "pretext," which in turn permits an inference of unlawful discrimination. *McDonnell Douglas*, 411 U.S. at 804.

To meet the pretext requirement, Mason must show that the Defendants' stated reason given for the employment action was a lie to hide unlawful discrimination. *Martino v. Western & Southern Financial Group*, 715 F.3d 195, 202 (7th Cir. 2013); *see also Van Antwerp v. City of Peoria, Ill.*, 627 F.3d 295, 298 (7th Cir. 2010)(stating that to show pretext, the plaintiff must show the action is based on a "lie—not just an error, oddity, or oversight").

## C.  Mason Has No Competent Direct Evidence That ATT Failed to Hire Him Because of His Age

Mason cannot establish a viable age discrimination claim under the direct method of proof because Mason's only direct evidence of age discrimination is Boysen Anderson's remarkable and controverted claim that Scott Vallier openly admitted that ATT would not rehire Mason because of his age. (DPFF ¶ 173.)  While such alleged

26

evidence, if true, might point directly to a discriminatory reason for [Defendants'] action," *Adams*, 324 F.3d at 939, Anderson's allegations are plainly contradicted by the record evidence and should not be credited for purposes of summary judgment. *Scott*, 550 U.S. at 380.

If anything, the record evidence shows that Mason's age played no part in Defendants' decision.  In May 2010, with Mason's 60th birthday imminently approaching, ATT recalled Mason from layoff and invited him to return to work. (DPFF ¶¶ 2, 47.) But Mason refused ATT's offer to return to work, opting instead to retire because he was "getting a little older, no spring chicken and there was [sic] fish in Lake of the Ozarks [he] hadn't caught yet."  (*Id.*, ¶¶ 48-50.)  Defendants similarly informed Mason that he was eligible for rehire in June 2011, at which time Mason was 61 years old. (*Id.*, ¶¶ 2, 64.)  Yet Mason again waivered, informing ATT that he would "think about it." (*Id.*, ¶ 65.)  Given ATT's alacrity to welcome Mason back at age 59 and age 61, Mason cannot plausibly assert that Defendants suddenly began discriminating against him due to his age just a few months later in February 2012.

### D.     Mason Cannot Establish a Prima Facie Case of Age Discrimination under the Indirect Method of Proof

Mason similarly cannot establish a viable age discrimination claim under the indirect method of proof because (1) he was not qualified for the position to which he applied; (2) he has not identified any similarly situated, "substantially younger" individuals who were treated more favorably; and (3) Defendants' proffered reason for rejecting his application was legitimate and not pretextual. *Schaffner*, 256 F.3d 616, 620 (7th Cir. 2001); *Ransom*, 217 at 470; *Fisher*, 139 F.3d at 1141.

At the time Mason applied for reemployment with ATT in February 2012, ATT

driver hiring requirements mandated that a driver applicant must have had one full year of over-the-road tractor trailer driving experience within the past three years.   (DPFF ¶ 94.)   When ATC Transportation LLC Driver Hiring Specialist Susan Jecevicus reviewed the information contained in Mason's February 12, 2012 application, she determined that Mason did not meet ATT hiring requirements with respect to over-the-road tractor trailer experience.  (*Id.*, ¶ 95.)  On that basis alone, Jecevicus sent Mason a generic denial letter via e-mail at 1:44 p.m. on Monday, February 13, 2012.  (*Id.*, ¶ 96.)

Because Mason lacked sufficient over-the-road tractor trailer experience, he was not qualified for the ATT truck driver position.  He therefore cannot establish a prima facie case of age discrimination.  *Schaffner*, 256 F.3d 616, 620 (7th Cir. 2001); *Ransom*, 217 at 470; *Fisher*, 139 F.3d at 1141.

Mason's attempt at proving age discrimination through the indirect method of proof similarly fails because he has not identified any similarly situated but "substantially younger" individuals who were treated more favorably.  *Schaffner*, 256 F.3d at 620 (7th Cir. 2001); *Ransom*, 217 at 470; *Fisher*, 139 F.3d at 1141.  Mason cannot draw a bright line at age 60 and critique Defendants' hiring practices; he must show that Defendants favored similarly situated applicants who were at least 10 years younger than Mason as of February 2012.  *See id.*

Lastly, Mason's indirect age discrimination claim must fail because Defendants' reason for not hiring Mason -- failure to meet driver hiring credentials -- was legitimate, non-discriminatory, and non-pretextual.  Pretext is more than just a mistake or a foolish decision; it is a "deliberate falsehood," a lie covering up a true discriminatory or retaliatory motive. *Forrester v. Rauland-Borg Corp.*, 453 F.3d 416, 419 (7th Cir. 2006).

"[T]he question is never whether the employer was mistaken, cruel, unethical, out of his head, or downright irrational in taking the action for the stated reason, but simply whether the stated reason was his reason: not a good reason, but the true reason." *Id.* at 417-18. "The only concern in reviewing an employer's reasons for termination is the honesty of the employer's beliefs." Id. at 419.

As noted above, Susan Jecevicus rejected Mason's February 12, 2013 application because she believed that Mason lacked the over-the-road tractor trailer experience mandated by ATT driver hiring requirements. (DPFF ¶¶ 94-95.)  This ground is both legitimate and non-pretextual.  Accordingly, Mason's indirect age discrimination claims must fail as a matter of law.

## III.   MASON CANNOT ESTABLISH A VIABLE DISABILITY DISCRIMINATION CLAIM

Mason's ADA claim must fail as a matter of law because (1) Mason is not disabled within the meaning of the ADA; (2) Mason lacks direct evidence of disability discrimination; (3) Mason cannot establish a prima face case of indirect disability discrimination since he was not qualified for the ATT truck driver position; and (4) Defendants had a legitimate, non-discriminatory, and non-pretextual reason for rejecting Mason.

### A.   <u>Applicable Legal Standard and Methods of Proof</u>

"The ADA prohibits employers from discriminating against disabled employees because of their disability." *Dickerson v. Bd. of Trustees of Community College Dist. No. 522*, 657 F.3d 595, 600 (7th Cir. 2011) (citing 42 U.S.C. § 12112(a)). Like his ADEA claim, Mason can prove disability discrimination under the ADA by using either the direct or indirect method of proof.  *Robin v. Espo Eng'g Corp.*, 200 F.3d 1081, 1088 (7th

Cir. 2000).

Under the indirect method of proof, Mason must first establish a *prima facie* case of discrimination. *Dickerson,* 657 F.3d at 601 (citing *Lloyd v. Swifty Transp, Inc.,* 552 F.3d 594, 601 (7th Cir. 2009); *McDonnell Douglas,* 411 U.S. at 802). In the Seventh Circuit, an individual establishes a prima facie case of disability discrimination case by "showing that (1) he is disabled under the ADA; (2) he was meeting his employer's legitimate employment expectations; (3) he suffered an adverse employment action; and (4) similarly situated employees without a disability were treated more favorably." *Dickerson,* 657 F.3d at 601 (internal citation omitted); *see also Hobgood v. Illinois Gaming Bd.,* 731 F.3d 635, 644 (7th Cir. 2013) (noting the four prima facie factors).

If Mason establishes a prima facie case, Defendants must identify a legitimate, non-discriminatory reason for their decision not to rehire him. *Rooney v. Koch Air, LLC*, 410 F.3d 376, 381 (7th Cir. 2005). If Defendants satisfy this requirement, Mason must then prove by a preponderance of the evidence that Defendants' reasons are pretextual. *Lloyd*, 552 F.3d at 601.

**B.      Mason's Disability Discrimination Claim Fails Because Mason Was Not "Disabled" Within the Meaning of the ADA in February 2012**

The ADA prohibits an employer from discriminating against a qualified individual with a disability. *See* 42 U.S.C. § 12112(a*); Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 669 (7th Cir. 2000). To establish disability discrimination, Mason must first show that he is disabled within the meaning of the ADA. *Nese v. Julian Nordic Const. Co.*, 405 F.3d 638, 641 (7th Cir. 2005).

Mason can establish that he is disabled by showing (1) that he has a physical or mental impairment that substantially limits him in one or more major life activities; (2)

that he has a record of such an impairment; or (3) that Defendants regarded him as having

such an impairment. 42 U.S.C. § 12102(2).

Mason contends that (1) he was actually disabled at the time he applied to ATT in

February 2012 and (2) that Defendants "regarded him" as disabled at such time.  (*See*

Compl., Dkt. 1, ¶¶ 1-17.)   Neither contention is correct.

### 1.   *Mason Was Not Actually Disabled as of February 2012*

On his February 15, 2012 EEOC Intake Questionnaire, Mason indicated that he

had a disability – "bad feet."   (DPFF ¶ 141.)  Mason now claims that he was actually

disabled as of February 2012 because he would have experienced "some discomfort" due

to his "bad feet" if he had to stand on his feet for 12, 14, or 16 hours a day.  (*Id.*, ¶ 142.)

Yet Mason admits that he did not have any problems with his feet: (a) in any of

the work he has performed for other employers since 2010 or (b) when he applied for

reemployment with ATT in February 2012.  (*Id.*, ¶ 145.)  Mason likewise admits that

none of his other alleged "complications" -- diabetes, high cholesterol, past cancer and

past cancer treatment, hernia repairs, missing gall bladder, or gout -- limited his ability do

anything as of February 2012.  (*Id.*, ¶ 146.)  In fact, Mason applied for and obtained

employment as a truck driver with Cold Iron shortly after his February 13, 2012 denial by

ATT and worked for them during March and April of 2012.  (*Id.*, ¶ 147-48.)

Further, Mason concedes that he has not been off work for any period of time due

to a medical condition since late 2009.  (*Id.*, ¶ 149.)  Per Mason, neither plantar fasciitis

nor any other health condition has prevented Mason from working since late 2009.  (*Id.*,

¶ 150.)  Mason began working as a driver for All About Boats in May 2012 and still

performs work for them.  ¶ 151.)   And since January 2014, Mason has been working as

an owner-operator delivering large RVs from factory or storage lots to dealers. ¶ 152.)

Mason's aforementioned admissions underscore that he did not have a physical or mental impairment that substantially limited him in one or more major life activities at the time of his February 12, 2012 application for employment with ATT. *See Noriega-Quijano v. Potter,* 2009 WL 6690943, at * 5 (E.D.N.C. March 31, 2009) (holding that individual with arched feet, plantar fasciitis, and chronic lower back pain limited to an eight-hour workday and 40-hour workweek and restricted from running, jumping, marching, lifting, and prolonged standing did not qualify as disabled "even under the newly broadened standards set forth in the ADAAA," because the restrictions did not rise to the level of a substantial limitation on a major life activity, "even when those terms are broadly construed.")

## 2. *Defendants Did Not Regard Mason as Disabled as of February 2012*

Under the ADA, an individual meets the requirement of "being regarded as having such an impairment" if the individual establishes that he or she has been subjected to an action prohibited under this chapter because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity. 42 U.S.C. § 12102.

However, it is a "well-established principle that an employee cannot hold an employer liable under the ADA if the employer has no knowledge of the employee's disability." *Spurling v. C&M Fine Pack, Inc*., 2014 U.S. App. LEXIS 660 (7th Cir. 2014). For instance, in *Echols v. Kalamazoo Public Schools*, 2012 U.S. App. LEXIS 25509 (6th Cir. 2012), the court held that the employer could not have regarded the unsuccessful applicant as having a disability where there was no evidence that the

decision maker had any knowledge of her impairment (a head injury). Likewise, in *Adeleke v. Dallas Area Rapid Transit*, 2012 U.S. App. LEXIS 18130 (5th Cir. 2012), the court held that where none of the decision makers knew about the individual's mental illness (or regarded him as disabled), the employee could not prove disability discrimination.

Similarly here, the individual making the decision to reject Mason's application on February 13, 2012, Susan Jecevicus, lacked any knowledge that Mason had an impairment of any kind. Jecevicus did not review any materials other than Mason's application before issuing him a denial letter based on his failure to meet ATT's hiring requirements. (DPFF ¶ 99.) Nor did Jecevicus did not consult with anyone else at ATT before issuing the denial e-mail to Mason on February 13, 2012. (*Id.*, ¶ 100.) Jecevicus alone made the February 13, 2012 decision to reject Mason's application; Scott Vallier, Matt Troha, and/or Jennifer Clanton played no part in the decision-making process. (*Id.*, ¶ 106.)

Jecevicus was not involved in the discussions regarding Mason's eligibility for rehire by ATT in June 2011 because she was not yet employed by ATC Transportation (or ATT) at that time. (*Id.*, ¶ 102.) Likewise, Jecevicus did not have any knowledge of the June 2011 discussions between Scott Vallier, MYCO, and others regarding Mason's eligibility for rehire at the time she reviewed and denied Mason's employment application. (*Id.*, ¶ 103.) And at the time she reviewed and rejected Mason's February 12, 2012 employment application, Jecevicus did not know anything about Mason's worker's compensation history, short-term disability history, receipt of IAMAW pension benefits, receipt of social security disability benefits, or any of Mason's past or present

health conditions. (*Id.*, ¶ 104.) Nor did Mason self-identify as an individual with a disability on his February 12, 2012 employment application. (*Id.*, ¶ 90.) In fact, at the time Jecevicus reviewed and rejected Mason's February 12, 2012 employment application, she did not know who Mason was or that he had retired from ATT in May 2010. (*Id.*, ¶ 101.)

Given Jecevicus's utter lack of knowledge regarding Mason's impairment, Defendants could not and did not "regard" Mason as disabled under the ADA[3]. *See Echols*, 2012 U.S. App. LEXIS 25509; *Adeleke*, 2012 U.S. App. LEXIS 18130.

### B.   Mason Has No Direct Evidence of Disability Discrimination

Mason cannot establish a viable disability discrimination claim under the direct method of proof because Mason's only direct evidence of age discrimination is Boysen Anderson's remarkable and controverted claim that Scott Vallier openly admitted that ATT would not rehire Mason because of his disability. (DPFF ¶ 173.)   While such alleged evidence, if true, might point directly to a discriminatory reason for [Defendants'] action," *Adams*, 324 F.3d at 939, Anderson's allegations are plainly contradicted by the record evidence and should not be credited for purposes of summary judgment. *Scott*, 550 U.S. at 380.

Indeed, the record evidence shows that Defendants had no concern about the fact that Mason had suffered a past worker's compensation injury, had taken short-term disability for "bad feet," or had begun to collect social security disability payments.

---

[3] Jecevicus' lack of knowledge of Mason's impairment would also preclude a "record of" disability claim, though Mason has not alleged one.  *See Lawson v. CSX Transportation*, 245 F.3d 916 (7th Cir. 2001) (noting that a plaintiff claiming a "record" of a disability "must demonstrate that the employer knew of that record.")

Regardless of these facts, Defendants consistently invited Mason to return to work or to re-apply.  (DPFF ¶¶ 37, 30, 42, 45-47, 63.)

> ### C.   Mason Cannot Establish a Prima Facie Case of Disability Discrimination Under the Indirect Method of Proof

Mason's failure to hire disability discrimination claim also fails under the indirect method proof because (1) Mason was not qualified for the ATT truck driver position; (2) Mason has not offered evidence regarding non-disabled similarly situated employees; and (3) Defendants' reason for rejecting Mason's application was legitimate, nondiscriminatory and non-pretexual.

A determination as to whether a person is qualified for an employment position under the ADA involves a two-step inquiry: (1) the employee must possess "the appropriate educational background, employment experience, skills, licenses, etc." and (2) he must also be able to "perform the essential functions of the position held or desired, with or without reasonable accommodation." *Bay v. Cassens Trans. Co*., 212 F.3d 969, 974 (7th Cir. 2000); *see also Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996).

Here, at the time he applied for re-employment as a truck driver in February 2012, Mason lacked the requisite tractor trailer experience mandated by ATT driver hiring requirements.  (DPFF ¶¶ 92-96.)   Consequently, Mason was not "qualified" for the position within the meaning of the ADA and his claim must fail.  *Bay*, 212 F.3d at 974; *Bombard*, 92 F.3d at 563.

Mason's disability discrimination claim must also fail under the indirect method of proof because he has not adduced evidence of any similarly situated non-disabled employees who were treated more favorably.  *See Dengel v. Waukesha Cnty*, Case No.

13-cv-484, p. 24 (E.D. Wis. Apr. 14, 2014) (holding that failure to produce evidence of similarly situated individuals is fatal to indirect method ADA claim).

Finally, Mason's indirect age discrimination claim must fail because Defendants' reason for not hiring Mason -- failure to meet driver hiring credentials -- was legitimate, non-discriminatory, and non-pretextual.  *Forrester*, 453 F.3d at 419. Susan Jecevicus rejected Mason's February 12, 2013 application because she believed that Mason lacked the over-the-road tractor trailer experience mandated by ATT driver hiring requirements. (DPFF ¶¶ 94-95.)  This is a legitimate, non-discriminatory, and non-pretextual basis. Accordingly, Mason's indirect disability discrimination claims must fail as a matter of law.

## <u>CONCLUSION</u>

For the aforementioned reasons, Defendants respectfully request that the Court enter summary judgment in favor of Defendants and dismiss Plaintiff's claims with prejudice.

Dated this 19th day of May, 2014.

/s/ Timothy T. Lecher
_____
Christopher P. Banaszak
WI State Bar ID No. 1023178
cbanaszak@reinhartlaw.com
Timothy T. Lecher
WI State Bar ID No. 1086731
tlecher@reinhartlaw.com
Reinhart Boerner Van Deuren s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
Attorneys for Defendants.

Mailing Address:
P.O. Box 2965
Milwaukee, WI 53201-2965
Telephone:  414-298-1000
Facsimile:  414-298-8097

36